Law Offices of John H. Carmichael
John H. Carmichael, Esq. (196416)
269 South Beverly Drive, Suite 395
Beverly Hills, California 90212
Telephone: (949) 916-9934
email: jhclaw@gmail.com

*Attorney for Plaintiff*
Harlan Ellison

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

CV09-01777 CAS (CWx)

HARLAN ELLISON, *an individual*,

    *Plaintiff,*

v.

CBS-PARAMOUNT, INC., *a Delaware corporation*; WRITERS GUILD OF AMERICA, a labor organization; and Does 1–10, inclusive,

    *Defendants.*

Case. No.

COMPLAINT FOR:

1. **BREACH OF THE DUTY OF FAIR REPRESENTATION**

2. **BREACH OF COLLECTIVE BARGAINING AGREEMENT**

[SECTION 301, LABOR MANAGEMENT RELATIONS ACT]

DEMAND FOR JURY TRIAL

---

Plaintiff complains and avers as follows:

## PARTIES

1. Harlan Ellison (Ellison), a Los Angeles resident, is a famous author, screenwriter, commentator and public speaker. He is the winner of countless literary awards and known publicly as the writer of one the best-loved and most honored original *Star Trek* episodes, *The City on the Edge of Forever* (*City*), first broadcast in 1967.

2. Defendant CBS-Paramount, Inc. (Paramount), a Delaware corporation, is headquartered in and does business in Los Angeles. Paramount is the successor in interest to DesiLu Studios (DesiLu), which produced *City* for broadcast on the National Broadcasting Company. DesiLu no longer has a separate existence and is not a party to this action. Ellison was employed by DesiLu (succeeded in relevant rights and obligations by Paramount), and wrote *City* at that time. Paramount is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142(1), (3), 185(a) (Sections 301(a) and 501 (1) of the Labor Management Relations Act), and succeeded to DesiLu's obligations in that regard.

3. The Writers Guild of America (WGA) is a labor organization with offices in Los Angeles and New York that represents writers in the film and television industry generally, and is thus a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142(1), (3), 185(a) (Sections 301(a) and 501(1) and (3) of the Labor Management Relations Act.) The Western offices of the WGA are in Los Angeles.

4. Ellison is a Member in good standing of the WGA and has been a Member for nearly fifty years, having twice been elected to, and having served on the WGA Board of Directors.

## JURISDICTION AND VENUE

5. This case seeks relief for (a) breach of the WGA's duty of fair representation of Ellison and (b) breach of the terms of the relevant collective bargaining agreement by Paramount. This Court has jurisdiction of these claims under: 29 U.S.C. § 185(a) (Section 301 of the Labor Management Relations Act of 1947), providing for jurisdiction over claims arising from violations of collective bargaining agreements.

6. Further, this Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367

ELLISON V. PARAMOUNT, ET AL.
COMPLAINT

PAGE 2

(supplemental jurisdiction over state-law claims that form part of a single case or controversy, if any later alleged), as well as 28 U.S.C. § 1331, 1337, as this case arises under federal laws regulating interstate commerce.

7. This Court may assert personal jurisdiction over Defendants because: Defendants Paramount and WGA maintain a place of business in this District where the acts and incidents herein averred took place; and

8. This Court is a proper venue for this matter under 28 U.S.C. §§ 1391(b) and 1392(a) because:

(a) Defendant Paramount and its relevant records may be found in this District, and substantial events relevant to the causes of action alleged in this Complaint occurred in this District; and

(b) Defendant WGA may be found in this District, and substantial events relevant to the causes of action alleged in this Complaint occurred in this District.

(c) Venue is also appropriate under 29 U.S.C. § 185(c), as the defendant WGA has one of its two principal offices in this judicial district and is engaged in representing Members in this judicial district.

9. Does 1–10 are persons or entities whose identity is not known to Ellison on this date, who materially participated in, assisted in, and/or conspired to cause harm to Ellison through the conduct of which this action complains.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

10. Defendant WGA and defendant Paramount are parties to a collective bargaining agreement known as the Television Film Minimum Basic Agreement (MBA). The particular MBA at issue in this case was entered into in 1960, and amended in 1966. The 1960 MBA as amended covers work that WGA Members, including Ellison, duly performed during the period of the operation of that particular MBA, including Ellison's *City* teleplay, which aired in 1967.

11. Paramount's predecessor-in-interest, DesiLu, hired Ellison to write a screenplay for the *Star Trek* series. Ellison delivered the *City* script and the episode based thereupon was aired during *Star Trek's* first season. This episode receives continuing accolades, has become one of the all-time money making commercial favorites, was ranked as one of the "100 Greatest Television Episodes of All Time" by *T.V. Guide* in 1997 as part of its 50 year survey; and "One of the 100 Most Memorable moments in T.V. History" in the 29 June 1996 nationwide survey; and as recently as in its 20-26 April 2002 issue, *T.V. Guide* celebrated *Star Trek's* 35th anniversary featuring, of the hundreds of episodes since its debut, the "35 Greatest Moments!" *City* was # 2.

12. Pled *in haec verba*, the 1960 MBA, as amended by the 1966 Amendment, provides in relevant part in Article XVIII (N) on page 27: "ADDITIONAL COMPENSATION FOR CERTAIN USES OF SERIAL OR EPISODIC SERIES MATERIAL[:] Additional compensation shall be paid to the writer of a story or a story and teleplay for an established serial or episodic series television film as provided in this Paragraph N.... If the Producer licenses or grants to any third party the publication rights to such material ... Producer will pay to the writer an amount equal to fifteen percent (15%) of the Producer's net receipts derived therefrom. The net receipts to the Producer shall be computed by deducting from the gross amounts paid to the Producer on account of such license or sale of the publication rights, all costs, expenses and charges incident to such licensing or sale, including royalties, commissions and other amounts which the Producer is contractually obligated to pay by reason of such publication or measured by receipts derived therefrom." The 1966 Amendment modifies that section by stating: "Article XVIII Compensation – The following additions and amendments shall be made to Article XVIII (Compensation): ...(viii) In subparagraph (g) of Paragraph N the words and figure fifteen per cent (15%) should be deleted and the words and figure twenty-five percent (25%) shall be

inserted in lieu thereof.") Regarding merchandising rights the 1966 Amendment provides on page 2: "(x) Insert a new subparagraph (m) of Paragraph N providing for a five percent (5%) royalty on Producer's net receipts as defined in subparagraph (g) for merchandising rights under this Paragraph N." Other similar provisions entitle the WGA Member to receive 25% of the exercise of *dramatic rights*, 50% of the *radio rights, etc.* Importantly, there is no language in the 1960 MBA or its 1966 Amendment that abrogates or diminishes these substantial rights accorded union writers under its terms, or narrows the meaning of the term *publication rights* to include only word-for-word replications of teleplays.

13. On information and belief, Paramount has exploited the *City* teleplay numerous times since 1967 and specifically within the past four years. At all relevant times herein, Ellison did not receive *notice* of Paramount's exercise of any of the exploitation rights referred to above in Paragraph 12. Ellison did not receive *accountings* related to Paramount's exercise of any of the exploitation rights referred to above in Paragraph 12. Ellison did not receive *payment* for Paramount's exercise of any of the exploitation rights referred to above in Paragraph 12.

14. Instead Ellison was informed by a third party, and/or discovered for himself as a mere consumer, that Paramount had engaged in certain recent exercises of the exploitation rights in the *City* teleplay including, without limitation, merchandising such as a "talking" Christmas ornament, and a series of successful books based on the *City* teleplay. Ellison believes there were and continue to be countless additional exploitations of which he was not specifically informed and of which he is not specifically aware, but nonetheless form part of the basis of his Complaint and shall be presented in accordance with proof at the time of trial.

15. Ellison avers that since he never received proper notice or accounting related to Paramount's various exploitations of the *City* teleplay, the applicable time limitations have not yet began to run on claims for payment from those exploitations.

16. Ellison attempted on several occasions over the past year to obtain the WGA's assistance in obtaining his share of the various revenue streams established in the 1960 MBA and 1966 Amendment. Ultimately the WGA failed and refused to act on Ellison's behalf. Initially the WGA would promise to take a few steps to look into Ellison's claims, or ask for further information, but not formally deny Ellison's request. Toward the end of Ellison's attempts to initiate an arbitration or at least a real inquiry, the WGA falsely suggested that Ellison had "withdrawn" his claim so as to manufacture a more favorable record and avoid responsibility for advocating on behalf of Ellison.

17. Ellison made his attempts to obtain proper WGA representation on the phone and in person, in writing and through counsel. The WGA finally refused the direct requests by Ellison and his counsel for intervention and assistance on February 2, 2009, indicating the WGA would take no further action on Ellison's demand for representation in an Arbitration proceeding or otherwise through informal efforts. The WGA falsely suggested, as it had done before, that Ellison had verbally withdrawn his claim (even though it was earlier asserted in writing by counsel), when in fact what Ellison had requested was a "statement of non-arbitrability" if the WGA was refusing to arbitrate his claims. The WGA's recent attempts to make it look like Ellison was "withdrawing" his claims reflect its bad faith and propensity to lay a false record to suggest the WGA was not failing to take the requested and required action.

18. The WGA refused to initiate arbitration proceedings on behalf of Ellison, or otherwise reasonably pursue payment to Ellison under the 1966 MBA, as amended. In its refusal to act on behalf of Ellison, the WGA relied at least in

part on justifications that are pre-textual, arbitrary, and serve the institutional interests of the WGA and Paramount rather than the interests of Ellison as an individual member of a labor organization. To some extent, this case is about the degree to which the Producers have co-opted the WGA, and how *the WGA in various ways improperly screens out contractually legitimate claims by its individual Members to avoid rocking the boat.* This self-serving institutional stance leaves individual WGA Members with few viable remedies other than those provided by the Labor Management Relations Act, and Ellison thus requests those remedies herein.

19. On information and belief, Paramount has earned millions exploiting the *City* teleplay since it was aired in 1967. Yet Paramount has not accounted to Ellison or paid him for such exploitations as it is required to do under the 1960 MBA and 1966 Amendment. Ellison thus seeks the intervention of this Honorable Court in ensuring that the terms of the collective bargaining agreement at issue are observed and upheld by the WGA, and honored by Paramount.

### FIRST CLAIM FOR RELIEF

### (Breach of Duty of Fair Representation Against the WGA and Does 6-10)

20. Paragraphs 1 through 19 are incorporated by this reference and alleged herein as though set forth fully in this section.

21. At all material times to this action, the WGA owed Ellison a duty of fair representation. The duty of fair representation requires a labor organization to serve its Members' interests without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. This duty prohibits bad faith or discriminatory treatment of Members by their union. The duty to refrain from arbitrary conduct further prohibits actions by the union so far outside a wide range of reasonableness as to be irrational.

22. By the acts alleged in this Complaint, the WGA breached the duty of fair representation owed Ellison. Among other things, the WGA did not request and/or insist upon material information from Paramount related to the various exploitations of the *City* teleplay which might be reasonably covered by the MBA, did not initiate a grievance or arbitration proceeding when asked repeatedly in person and in writing despite earlier offering to do so, and did not respond to reasonable requests from Ellison at least to obtain some kind of accounting from Paramount for the recent publication of a paperback trilogy based on *City* by Paramount's licensor and sister company, Pocket Books/Simon and Schuster, Inc., (*Pocket Books/Simon and Schuster)*. (The series title of that exploitation is *Crucible.*) In the end, the WGA falsely attempted to make it appear as though Ellison had withdrawn his request and demand for an arbitration related to Paramount's chronic failure to account to Ellison, or adhere to the terms of the 1960 MBA as amended.

23. The stated justifications for WGA's refusal to proceed on behalf of Ellison were pre-textual and/or arbitrary, in bad faith, and designed to serve the WGA's organizational imperative toward self-preservation, and not the interests of an individual Member with a legitimate claim under the collective bargaining agreement.

24. In one instance, Ellison asked the WGA to pursue his claim to revenue from a particular "talking" Christmas ornament featuring one of the key elements of his *City* teleplay, *The Guardian of Forever*. The WGA informed Ellison that when they contacted Paramount about it, the Paramount representative was "going to check the big computer." It is not clear what "the big computer" is or whether it was ever "checked" by anyone or whether the "big computer" produced an answer to the question of how much money Paramount received for the license of the merchandising rights in and to the Christmas ornament, or how much Ellison was to receive. The WGA never informed Ellison of the result of

such alleged inquiry. Instead, having done nothing to ascertain any real information, the WGA later informed Ellison that the merchandise was "outside the two year limitations period" for claims under the MBA. However, because Ellison never received notification or an accounting from Paramount or the WGA about exploitations of the *City* teleplay, and only found out about the ornament by happenstance, he contended that such time limitation should not apply to unreported exploitations of the *City* teleplay. In any event, longer limitations apply even under the MBA.

25. In another instance, Paramount licensed to Simon & Schuster/Pocketbooks—one of its sister corporations—the right to base a series of books on the *City* teleplay (the *Crucible* series) that make use of all the key aspects of that teleplay including the so-called *Guardian of Forever* entity specific only to that episode and, pivotally at the core of all three books, Ellison's creation of Sister Edith Keeler and the significant question of the impact of her life or death on the course of events, plus unique time-travel concepts and singular themes, plot points, mood, an entire storyline set in the era of America's 1930's Great Depression, and pacing—all present in the *City* teleplay. Simon & Schuster/Pocket Book used references to the *City* episode in marketing materials developed to promote and sell the books. No one reading the books would have any doubt that they were reading a work fundamentally derivative of the ideas, expressions and concepts contained in the *City* episode, and would probably not otherwise purchase the books. Paramount, through its licensor and sister company, Pocket Books/Simon and Schuster carefully and, Ellison asserts, with flagrant intent, purposely avoided any mention of Ellison anywhere on or in the trilogy though his WGAW-Award-winning authorship of *City* is universally acknowledged.

26. The WGA told Ellison that the WGA's own, alleged internal interpretation of the terms of the WGA narrowly restrict the use of the broad

term *publication rights* in the MBA only to those circumstances where the Producers make a virtual word-for-word replication of the teleplay.

27. To the extent the WGA has internally or otherwise interpreted the broad language of the collective bargaining agreement to exclude such a substantial use of a Member's work from the meaning of the term *publication rights,* such restriction is arbitrary, unreasonable, pre-textual, contrary to accepted rules of contract interpretation, and denies the Members the fruits and benefits of the collective bargaining agreement.

28. Such an unreasonably narrow interpretation of the term *publication rights* encourages the Producer or its licensee to change minor aspects of the teleplay underlying an episode while simultaneously trading on the unique aspects of that episode to sell books based on work by WGA Members to whom the Producer duplicitously avoids substantial compensations.

29. To the extent the WGA has become complicit in such an interpretation of *publication rights,* and such justification is at least part of the basis for its failure to proceed on behalf of Ellison in the instant circumstance, such interpretation is not only unlawfully narrow, but arbitrary, unreasonable, pre-textual, and in bad faith.

30. The WGA acts in bad faith by relying on this arbitrary and unreasonably narrow interpretation of publication rights so the WGA can shrink nearly altogether from direct confrontation with the Producers on this issue and simply tell its Members they have no rights. The WGA does this as part of its organizational imperative for self-preservation and to avoid rocking the boat on behalf of individual writers whenever it can.

31. Ellison demanded that the WGA pursue Paramount for an accounting and a payment on all its exploitations of *City* that might be compensable under the collective bargaining agreement. Ellison's claims extend to all exploitations from inception to date, and are not confined either to the aforementioned

Christmas ornament or *Crucible* series of books based on *City.* The WGA failed and ultimately refused to act on Ellison's reasonable requests, despite Ellison's intense efforts to seek relief. It would be futile for Ellison to pursue any further attempts to obtain relief through the WGA, as the WGA demonstrated for nearly a year through phone conversations, in personal meetings, and in writing that it has no intention of engaging in any advocacy on behalf of Ellison whatsoever to obtain compensation for Paramount's exploitations of *City* and in fact finally confirmed that fact in writing on February 2, 2009.

32. Further, Ellison was active in the recent writer's strike, on the picket line, in numerous media interviews, and in the granting to his union for *YouTube* exposure without recompense of a 3½ minute-long, pro-WGA excerpt from the recent film documentary feature about Ellison's life, *Dreams With Sharp Teeth*, in which Ellison powerfully makes the case to *pay the writer.* As of 11 March 2009, this pro-WGA *YouTube* piece has had more than 229,000 viewings. However, in certain of the aforementioned interviews and in other forums, Ellison was highly critical of the team that ultimately negotiated the strike settlement on behalf of WGA Members. Ellison publicly noted the sea-change occurring in the nature of the entertainment industry, and suggested that the WGA Members would not be well-served by the outcome of the negotiations that led to the current collective bargaining agreement.

33. On information and belief, the WGA Management, such as those charged with responding to his demand for arbitration on the *City* matter, were or became hostile to Ellison and this unwarranted hostility and/or discrimination was one of the unlawful reasons the WGA failed to pursue relief for Ellison from defendant Paramount under relevant provisions of the 1960 MBA as amended.

34. The WGA's breach of its duty of fair representation is one legal and proximate cause of Ellison's harm.

35. Ellison has suffered enormous monetary damage as a result of the WGA's breach of its duty of fair representation, but seeks in his prayer for relief only one dollar in monetary damages from the WGA. Ellison does not desire to take money from other writers, and the WGA operates with dues from its writer-Members. However, partly for the good of other writers, Ellison *does* seek a determination that the WGA breached its duty as averred, and seeks the intervention of this Honorable Court in determining the amounts, if any, that Ellison is owed from Paramount's exploitation of the *City* teleplay from inception to date, and an order requiring payment of those amounts.

## **SECOND CLAIM FOR RELIEF**

(Breach of a Collective Bargaining Agreement against Paramount, Does 1-5)

36. Paragraphs 1 through 19 are incorporated by this reference and alleged herein as though set forth fully in this section.

37. Under the 1960 MBA as amended by the 1966 Amendment, of which Paramount and the WGA are parties and Ellison is a third party beneficiary, Paramount is obligated to pay Ellison the percentages of its revenue from various exploitations of the *City* teleplay, as detailed in Paragraph 12, above, and as otherwise contained in the collective bargaining agreement.

38. On information and belief, Paramount and its licensors including *Star Trek*-affiliated publishers, have relentlessly exploited the merchandising, publication and other rights in and to the *City* teleplay, but have not notified Ellison of those exploitations, accounted to him, or paid him pursuant to the terms of the collective bargaining agreement. Some of these exploitations have occurred during the past four years and others may have occurred prior to that time but were/are not specifically known to Ellison.

ELLISON V. PARAMOUNT, ET AL.
COMPLAINT

PAGE 12

39. On information and belief Ellison avers that Paramount has no system in place for tracking its responsibilities to WGA Members upon licensing rights to third parties and willfully employs an ostrich-like approach, only accounting and paying WGA Members if specifically called upon to do so by the WGA. On information and belief, because the WGA systematically and improperly screens out or discourages legitimate claims like those of Ellison in this instance, Paramount is conveniently and improperly "relieved" by the WGA of the obligation of monitoring the rights of WGA Members in connection with its voracious and highly profitable licensing activities.

40. Ellison has been damaged by the breach in an amount not yet known, but which shall be presented in accordance with proof at the time of trial. Ellison seeks specific performance of the collective bargaining agreement, compensatory damages, reasonably foreseeable consequential damages, and incidental damages.

41. Paramount has acted in bad faith in failing to adhere to the collective bargaining agreement, and has acted willfully, maliciously, oppressively and fraudulently. To the extent punitive damages (not normally allowed in a breach of contract action) are supported by the Labor Management Relations Act, Ellison asserts his right to such damages.

# PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Harlan Ellison prays for judgment against Defendants as follows:

### On the First Claim For Breach of the Duty of Fair Representation
(Against the WGA and Does 6-10)

1. For a determination that the WGA and/or Does 6-10 have breached their duty of fair representation to Ellison for all the reasons averred herein above and those presented at trial; and

2. One U.S. dollar in claimed monetary damages (which is not a reflection of the total amount of actual monetary damage, which is much greater); and

3. For attorney's fees and costs, to the extent allowed by law;

### On the Second Claim for Breach of a Collective Bargaining Agreement
(Against Defendant Paramount and Does 1-5)

4. For specific performance and/or compensatory damages, jointly and severally, in an amount to be established in accordance with proof at trial, together with interest thereon at the legal rate; and

5. For reasonably foreseeable consequential damages;

6. For punitive damages, if and as allowed by law, in accordance with proof at trial, together with interest thereon at the legal rate; and

7. For attorney's fees and costs, to the extent allowed by law;

### On All Claims

8. For all other relief this court deems just and proper.

Respectfully Submitted,

March 13, 2009

John H. Carmichael
Law Offices of John H. Carmichael

**JURY TRIAL DEMANDED**

Plaintiff demands trial by jury on each and every cause of action contained in or fairly implied by this Complaint, whether appearing on the face of this document or later added pursuant to the Federal Rules of Civil Procedure.

*John H. Carmichael*
John H. Carmichael
Law Offices of John H. Carmichael

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

```
CV09- 1777 CAS (CWx)
```

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Harlan Ellison, an individual, PLAINTIFF(S) v. | CASE NUMBER CV09-01777 |
| CBS-PARAMOUNT, INC., a Delaware Corporation; WRITERS GUILD OF AMERICA, a labor organization; and Does 1-10, inclusive DEFENDANT(S). | SUMMONS |

TO: DEFENDANT(S): CBS-PARAMOUNT, INC., WRITERS GUILD OF AMERICA, DOES 1-10

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, John H. Carmichael, Esq., whose address is 269 S. Beverly Drive, Ste 395 Beverly Hills, CA 90212. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 3/13/09

By: LA'REE HORN
Deputy Clerk
(Seal of the Court)

1192

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)      SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Harlan Ellison

**DEFENDANTS**

CBS-PARAMOUNT, INC. and WRITERS GUILD OF AMERICA

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

John H. Carmichael, Esq.
269 S. Bev. Drive Ste 395
Beverly Hills, CA 90212

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ According to Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
LMRA Section 301, Breach of Fair Representation/Collective Bargaining

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☒ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **CV09-01777**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)　　　　　　　　　　　CIVIL COVER SHEET　　　　　　　　　　　Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles ~~Los Angeles~~ | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_  **Date** 3/13/09

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |